IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| SHERRI KIYOKO NUNN, | |
| Plaintiff, | CIVIL ACTION NO.: 2:20-cv-13 |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Antony Saragas ("the ALJ" or "ALJ Saragas") denying her claim for Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and remand the case. Docs. 13, 15. Defendant asserts the Commissioner's decision should be affirmed. Doc. 14. The Court held a hearing on June 7, 2021, at which counsel for both parties appeared and presented argument on Plaintiff's enumerations of error. Doc. 20. After review of the parties' written submissions and consideration of oral arguments and the entire record, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g). I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment.

**BACKGROUND**

Plaintiff filed applications for a Period of Disability, Disability Insurance Benefits, and Supplement Security Income on February 10, 2017, alleging an onset date of May 13, 2009.

R. 17, 253–71.[1]  Plaintiff's claims were initially denied on July 25, 2017, and denied again upon reconsideration on October 13, 2017.  R. 17, 120, 161.  On October 27, 2017, Plaintiff filed a request for hearing.  R. 17.  On December 20, 2018, ALJ Saragas held a hearing at which Plaintiff, who was represented by counsel, appeared.  Id.  James Waddington, a vocational expert, also appeared and testified at the hearing.  Id.

ALJ Saragas denied Plaintiff's claims for a Period of Disability, Disability Insurance Benefits, and Supplemental Social Security Income in a decision issued on February 6, 2019, finding Plaintiff not disabled under the Social Security Act.  R. 33.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

Plaintiff, born on March 22, 1972, was 37 years old at the time of the alleged onset date and 46 years old at the time of the ALJ's decision in 2019.  R. 31, 75.  She graduated high school, and Plaintiff's past relevant work experience includes working as a veterinary technician.  R. 30, 64, 278–79.

## DISCUSSION

I.   **The ALJ's Findings**

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

---

[1]   A transcript of the entire proceedings before the Social Security Administration appears at Document Number 11.  The transcript includes paginated Record cites.  Docs. 11-1 to 11-12.  The undersigned refers to the transcript using these same Record cites.

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Id. at 693–94 (ellipsis in

3

original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through the date of her hearing.  R. 19.  At step two, ALJ Saragas determined Plaintiff had the following severe impairments: fibromyalgia, Ehlers-Danlos syndrome, chronic fatigue syndrome, Reynaud's syndrome, tachycardia, a history of migraine headaches, post-traumatic stress disorder, bipolar disorder, depression, and anxiety.  R. 20.  At the third step, the ALJ determined Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of a listed impairment.  R. 20.  The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level with the following exceptions: she would be able to balance frequently; she would be limited to occasionally stooping, kneeling, crouching, and crawling; she would only be able to climb ramps or stairs occasionally; she should avoid climbing ladders, ropes, and scaffolds, as well as work place hazards, such as moving mechanical parts and unprotected heights; she could occasionally use foot controls with both lower extremities; she may perform no more than frequent fingering, feeling, and handling with both upper extremities; she should experience no more than moderate noise, occasional exposure to extreme temperatures, and occasional exposure to pulmonary irritants; she may have only occasional interactions with co-workers, supervisors, and the public; her workplace environment and routine should only change occasionally; and she should not perform assembly line, fast-

paced, or high-production quota work. R. 22. At the next step, the ALJ determined Plaintiff could not perform her past relevant work as a veterinary technician. R. 30. The ALJ concluded at the fifth and final step Plaintiff could perform jobs such as scheduler, mail clerk, and night guard, all of which exist in significant numbers in the national economy. R. 32.

## II.     Issue Presented

Plaintiff asserts six enumerations of error: (1) the ALJ erred in finding Plaintiff did not meet Listings 12.04, 12.06, 12.07, 12.08, or 12.15 when the record shows she has marked limitations in various Paragraph B criteria; (2) the ALJ erred in failing to consider any of Plaintiff's severe impairments in combination with each other; (3) the ALJ relied on material misstatements of the record regarding Plaintiff's impairments and treatment; (4) the ALJ failed to credit Plaintiff's complaints regarding the frequency and duration of her migraines; (5) the ALJ erred in finding Plaintiff had the RFC to perform frequent handling and fingering; and (6) the ALJ erred by assigning substantial weight to the consultative examiners' opinion but failing to take their limitations into account when determining Plaintiff's RFC. Doc. 13 at 1.

## III.    Standard of Review

It is well-established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV. The ALJ Failed to Consider Plaintiff's Ability to pay for Care

As part of Plaintiff's third enumeration of error, Plaintiff points to ALJ Saragas' reliance on Plaintiff's purported refusal to seek medical care or noncompliance with treatment plans as a reason her case should be remanded. Doc. 13 at 12. Plaintiff argues ALJ Saragas relied on Plaintiff's lack of medical care or treatment when determining whether to credit Plaintiff's subjective complaints, and this analysis is improper because he did not consider Plaintiff's ability to pay for treatment and ignores evidence of serious financial barriers Plaintiff faced. Plaintiff

6

contends relying on any non-compliance of medical treatment was inappropriate because ALJ Saragas never considered Plaintiff's ability to pay for treatment.

It is well-settled poverty may excuse failure to comply with treatment.  See Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003).  Moreover, "the ALJ may not draw any inferences about an individual's symptoms and [her] functional effects from a failure to seek or pursue medical treatment without first considering any explanation that might explain the failure to seek or pursue treatment."  Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 487 (11th Cir. 2012).

Defendant argues an ALJ is permitted to consider the amount and type of treatment a claimant received in making his determination.  Doc. 14 at 13.  Further, Defendant contends Plaintiff did not raise her inability to pay as a barrier to treatment at the hearing, and thus, ALJ Saragas was not required to discuss what effect, if any, Plaintiff's inability to pay had on her seeking or complying with medical treatment.  Id. at 14.

But Plaintiff did raise her inability to pay at her hearing.  When ALJ Saragas asked Plaintiff about her financial situation to pay for doctors, she stated she has no income.  R. 60 ("Q: How's your financial situation to pay for doctors?  A: I have no income.").  Plaintiff clarified her financial situation, explaining her house and car are paid off, and she uses food stamps to buy groceries.  R. 61.  Despite this exchange at the hearing, ALJ Saragas did not discuss, and did not appear to consider, Plaintiff's financial situation before taking her lack of compliance into account.  Additionally, there is other evidence in the record showing Plaintiff had no income and was not receiving or pursuing medical care because she was unable to pay for it.  See R. 742 ("Current Medical Care: none as she has no means to pay for it."), 1183 ("Current Medical Care: none as she stated that she cannot afford it.").

7

If the claimant's failure to follow medical treatment is not a primary basis for the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay is not reversible error. Ellison, 355 F.3d at 1272. At the June 7, 2021 hearing, Defendant argued Plaintiff's non-compliance was not the primary basis for the ALJ's decision. However, this argument is not persuasive. In the opinion, the ALJ's stated basis for his credibility determination is Plaintiff's "history of non-compliance" and "failure to pursue potentially therapeutic treatments." R. 28. When discounting Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms, the reason the ALJ articulated was Plaintiff's non-compliance with treatment, including her failure to take mental health medication and only attending one consultation with Consultants in Pain Management. R. 28. Likewise, when discounting Plaintiff's subjective complaints related to her physical impairments, the ALJ noted similar "themes" of non-compliance with medical treatment. R. 28. Thus, the ALJ primarily relied on Plaintiff's non-compliance with treatment in forming his determination about the intensity, persistence, and limiting effects of Plaintiff's symptoms. See Presley v. Soc. Sec. Admin., Comm'r, No. 4:17-cv-722, 2018 WL 447421, at *3–4 (N.D. Ala. Jan. 1, 2017) (concluding ALJ erred in discrediting plaintiff's subjective complaints due to lack of treatment, where record established plaintiff could not afford treatment); Simpson v. Colvin, No. 14-288, 2015 WL 3447880, at *7 (S.D. Ala. May 29, 2015) (explaining where an ALJ's finding is "inextricably tied to the finding of noncompliance," the ALJ errs by failing to consider the claimant's ability to afford treatment); cf. Ellison, 355 F.3d at 1275 (failure to consider claimant's ability to pay was not reversible error because the ALJ's decision primarily was based on factors other than the claimant's failure to obtain medical treatment); Moss v. Berryhill, No. 4:17-cv-3, 2018 WL 1456631, at *10–11 (N.D.

Ga. Feb. 2, 2018) (explaining an ALJ's failure to consider a claimant's ability to pay for treatment is harmless when the ALJ provides other reasons for his determination).

Because the ALJ relied on Plaintiff's non-compliance as a primary reason for discounting her subjective complaints, the ALJ must consider the claimant's explanation for her failure to seek treatment.  See Brown v. Comm'r of Soc. Sec., 425 F. App'x 813, 817 (11th Cir.2011) ("[T]he ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for [her] failure to seek treatment.").  Here, Plaintiff represented she could not afford to pay for medical treatment.  As noted above, poverty can excuse non-compliance in situations where the claimant cannot afford the prescribed treatment and can find no way to obtain it.  Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988).  Nonetheless, the ALJ did not acknowledge, let alone discuss, what effect Plaintiff's inability to pay for treatment had on her non-compliance with medical treatment.

At the June 7, 2021 hearing, Defendant also pointed to instances where the ALJ discussed Plaintiff's lack of compliance with treatment or failure to pursue treatment.  For example, when discussing her diagnosis of fibromyalgia, chronic fatigue syndrome, and Ehlers-Danlos syndrome, the ALJ observed Plaintiff's medical records show "sporadic and episodic treatment of her impairments[.]"  R. 23.  The ALJ also discussed Plaintiff's failure to return to Consultants in Pain Management after her first appointment, which he believed demonstrated Plaintiff has not exhausted potential remedies for her impairments.  R. 26.  Similarly, ALJ Saragas pointed to Plaintiff's "conservative outpatient treatment" as a reason for finding no more than moderate functional imitations.  R. 26.  However, ALJ Saragas did not discuss, for example, whether Plaintiff's inability to pay explained her sporadic treatment or whether she did not return to Consultants in Pain Management because of costs or for some other reason.  Further, any

9

explanation offered by Defendant at this point as to why Plaintiff's non-compliance is not due to inability to pay is immaterial and does not cure the deficiencies in the ALJ's opinion, even if supported by the record. NLRB v. Ky. River Cmty. Care, Inc., 532 U.S. 706, 715 n.1 (2001) (explaining a court reviewing administrative agency action may not "substitute counsel's post hoc rationale for the reasoning supplied by the" agency itself").

Moreover, to the extent an ALJ seeks to rely on whether claimant did or could have sought alternative sources of care from sources such as free clinics, the ALJ bears the responsibility of developing the record on whether such services existed. Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1268 (11th Cir. 2015) (holding the ALJ's decision was "not supported by substantial evidence because the record is underdeveloped with respect to . . . whether financial status prevented Henry from receiving alternate treatment for his back pain").

Accordingly, the ALJ's reliance on Plaintiff's noncompliance without evaluating what effect Plaintiff's ability to pay had on her compliance with medical treatment requires remand. See Dawkins, 848 F.2d at 1214; Presley, 2018 WL 447421, at *4; see also Whittington v. Astrue, No. 1:10-CV-131, 2012 WL 1035246, at *3 (M.D. Ga. Feb. 13, 2012) ("If the ALJ fails to make a determination regarding Plaintiff's ability to afford treatment prior to finding her not disabled due to noncompliance, the ALJ has committed reversible error.").

**V.     The ALJ Failed to Properly Account for Plaintiff's Migraines When Determining her RFC**

As part of her fourth enumeration of error, Plaintiff argues ALJ Saragas erred when making credibility determinations about Plaintiff's subjective complaints relating to the intensity and duration of her migraines. Doc. 13 at 13–15. Plaintiff contends the ALJ relied on boilerplate language and did not articulate specific reasons to support his credibility determinations. At the hearing, Plaintiff clarified the ALJ should have determined how many

absences, if any, Plaintiff's migraines would cause based on her subjective complaints regarding the frequency and duration of her migraines.

Defendant argues the ALJ considered Plaintiff's migraine headaches when making his RFC finding, though he did not find them disabling, and his analysis provides support for his findings. Doc. 14 at 14–15. Defendant contends the ALJ's finding Plaintiff's migraines were not disabling while including limitations to accommodate the impairment in her RFC determination was appropriate. At the June 7, 2021 hearing, Defendant acknowledged the ALJ found Plaintiff continues to suffer from migraines, as he included a history of migraine headaches as a severe impairment. R. 21. Nonetheless, Defendant maintained the ALJ was not required to consider how many absences Plaintiff's migraines would cause because he did not credit her subjective testimony.

ALJ Saragas questioned Plaintiff about her migraines at the Social Security proceedings. Plaintiff testified when she gets a migraine, she has put an ice pack on her head and lay in the dark, and it usually takes two to three days for her to recover and get back to normal. R. 25, 53. Despite this testimony and the ALJ finding Plaintiff's history of migraine headaches a severe impairment, ALJ Saragas made no specific finding of their frequency, intensity, or duration.[2] That is, the ALJ did not determine how often Plaintiff had migraine headaches, how severe

---

[2] There was some suggestion by Defendant at the June 7, 2021 hearing that, in finding Plaintiff's history of migraines a severe impairment, the ALJ was merely giving Plaintiff "the benefit of the doubt." However, a determination Plaintiff's history of migraines are a severe impairment means the ALJ found the migraines significantly limited Plaintiff's physical or mental ability to do basic work activities See 20 C.F.R. § 404.1520(c); Raduc v. Comm'r of Soc. Sec., 380 F. App'x 896, 898 (11th Cir. 2010) ("By definition, a severe impairment limits significantly a claimant's ability to do basic work activities."); see also Thomas v. Colvin, No. 3:15-cv-133, 2016 WL 11475232, at *7 (N.D. Fla. May 10, 2016) ("As the ALJ determined the migraines were a severe impairment, he gave the claimant's complaints at least some credence."). The record does not support Defendant's suggestion this was some hollow platitude by the ALJ for Plaintiff's benefit.

Plaintiff's migraine headaches are, or how long they would last, which are necessary findings to determine whether her RFC should have included absences.

ALJs should conduct such an inquiry whenever they deem a plaintiff's migraines to be a severe impairment. See, e.g., Munroe-Wilson v. Berryhill, No. 8:17-cv-3054, 2019 WL 1397929, at *6 (M.D. Fla. Mar. 28, 2019); see also Reis ex rel. Reis v. Astrue, 2012 WL 3231092, at *4 (M.D. Fla. Aug. 6, 2012) (remanding where the ALJ included did not explain why included RFC limitations accommodated Plaintiff's migraines and "never made any assessment of how frequent, long-lasting, or severe the headaches were"); Kidd v. Berryhill, No. 1:16-cv-723, 2017 WL 3712100, at *10 n.10 (M.D. Ala. Aug. 28, 2017) (noting the ALJ must assess the frequency, duration, and severity of claimant's migraines).

While the ALJ stated he included environmental limitations and mental limitations to accommodate her migraines, the ALJ does not explain what these limitations are or address the frequency or intensity of Plaintiff's migraines. R. 25, 29. It is not clear which RFC modifications the ALJ added because of Plaintiff's migraines or how the ALJ concluded such modifications were appropriate. Therefore, it is not possible to conduct a meaningful review of the decision. Thomas v. Colvin, No. 3:15-cv-133, 2016 WL 11475232, at *7 (N.D. Fla. May 10, 2016) (concluding court could not conduct meaningful review where ALJ failed to discuss credibility determinations related to plaintiff's migraine symptoms).

Moreover, the vocational expert testified missing at least one day of work per week would eliminate all jobs, demonstrating the frequency and intensity of Plaintiff's migraines may have been material. R. 69. Based on this testimony, the ALJ was required to assess whether Plaintiff's migraines would cause her to miss more than one day of work each week. See Wagner v. Colvin, No. 2:15-cv-720, 2017 WL 3087489, at *7 (N.D. Ala. July 20, 2017) (where

vocational expert testified missing more than one day of work per month would preclude all competitive employment, it was critical for ALJ to assess frequency of plaintiff's migraines).

Absent an assessment of Plaintiff's frequency, duration, or intensity of migraines and how many absences her migraines would cause, the undersigned is unable to determine whether the ALJ's RFC finding included appropriate limitations stemming from Plaintiff's severe migraines and whether she was able to carry out the requirements of the work identified by the vocational expert.  Munroe-Wilson, 2019 WL 1397929, at *6 (citing Reis, 2012 WL 3231092, at *4).  Accordingly, the case should also be remanded on this basis.

In sum, I **RECOMMEND** the Court **REMAND** this case so the ALJ may consider whether Plaintiff's inability to pay for treatment affected her non-compliance and for the ALJ to determine the frequency, duration, and severity of Plaintiff's headaches and whether her RFC should include further adjustments in light of that determination, including absences from work.  Given my recommendations, I decline to address Plaintiff's remaining enumerations of error.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **REMAND** this case to the Commissioner under sentence four of 42 U.S.C. § 405(g).  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C);

Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 19th day of July, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA